**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| M.P., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BLUECROSS BLUESHIELD OF ILLINOIS, et al.,<br><br>Defendants. | ) | No. 24-cv-02599<br><br>Judge Andrea R. Wood |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs M.P. and his daughter C.P. have brought this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), against Defendants BlueCross BlueShield of Illinois ("BCBS"), Arthur J. Gallagher (Illinois), LLC ("Plan Admin"), and the Arthur J. Gallagher & Co. Benefits Plan ("Plan"), alleging that Defendants wrongly denied coverage for C.P.'s mental health treatment in violation of the Mental Health Parity and Addiction Equity Act ("Parity Act"), 29 U.S.C. § 1132(a)(3). Plaintiffs' operative First Amended Complaint ("FAC") also requests statutory penalties under ERISA, 29 U.S.C. § 1132(c)(1). Defendants have filed a motion to dismiss the FAC in its entirety, pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 59.) For the reasons that follow, Defendants' motion is granted in part and denied in part.

**BACKGROUND**

For purposes of the motion to dismiss, the Court accepts all well-pleaded facts in the FAC as true and views those facts in the light most favorable to Plaintiffs as the non-moving parties. *See, e.g.*, *Anicich v. Home Depot USA, Inc.*, 852 F.3d 643, 648 (7th Cir. 2017). The FAC alleges as follows.

At all relevant times, Plaintiff M.P. was a participant in the Plan, a self-funded employee welfare benefits plan governed by ERISA. (FAC ¶ 5, Dkt. No. 27.) His daughter, Plaintiff C.P., was a beneficiary of the Plan. (*Id.*) Between October 5, 2020, and May 15, 2021, C.P. received inpatient mental health treatment at Cascade Academy ("Cascade"), a Utah-licensed residential treatment center ("RTC") for adolescents with mental health, behavioral, or substance abuse issues. (*Id.* ¶ 6.) Plaintiffs submitted claims to BCBS, the Plan's third-party claims administrator, seeking coverage for C.P.'s time at Cascade. (*Id.* ¶¶ 2, 7.) BCBS denied the claims because Cascade did not meet the Plan's definition of a RTC due to the lack of 24-hour onsite nursing services. (*Id.* ¶ 15.)

Plaintiffs then sued Defendants in the United States District Court for the District of Utah, *M.P. v. BlueCross BlueShield of Ill.*, No. 2:23-cv-00216-TC (D. Utah Apr. 3, 2023). Their complaint asserted three causes of action against Defendants. Count I was a claim for denial of benefits under 29 U.S.C. §1132(a)(1)(B)). Count II consisted of a claim for equitable relief for violation of the Parity Act. Count III asserted a claim for statutory penalties under ERISA for failure to produce documents related to the Plan's administration. The Utah district court dismissed the claims, finding that Plaintiffs had not pleaded a viable basis for coverage, did not allege a disparity between the 24-hour onsite nursing requirement for mental health compared to comparable medical care, and did not show that they had made the document request to the proper entity.

Plaintiffs then filed their FAC, at which time the parties jointly moved the Utah court to transfer the case to the Northern District of Illinois. The motion to transfer was granted. The FAC adds new allegations to support the same claims as previously pleaded: recovery of benefits (Count I), violation of the Parity Act (Count II), and a request for statutory penalties (Count III).

## DISCUSSION

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014).

### I. Parity Act Claim (Count II)

The Court begins its consideration of Defendants' Rule 12(b)(6) motion with Count II.

The Parity Act requires group health plans that provide both medical benefits and mental health and substance abuse benefits to ensure parity between the two. Specifically, the statute prohibits plans from applying treatment limitations to mental health or substance abuse benefits that are "more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan" and from imposing "separate treatment limitations" applicable only to mental health or substance use disorder benefits. 29 U.S.C. § 1185a(a)(3)(A)(ii). To state a claim under the Parity Act, a plaintiff must show that the plan is facially discriminatory—*i.e.*, it imposes more restrictive terms on mental health care than on comparable medical or surgical care—or that it is discriminatory in application. *See C.M. v. Health Care Serv. Corp.*, No. 24-cv-02122, 2025 WL 933847, at *3 (N.D. Ill. Mar. 27, 2025). The parties do not dispute that the Plan is subject to the Parity Act.

Defendants contend that the FAC's Parity Act claim fails because Plaintiffs do not contest that the Plan applies the same 24-hour nursing requirement to both RTCs and their medical and surgical counterparts—Skilled Nursing Facilities ("SNF") and Inpatient Rehabilitation Facilities ("IRF")—and thus treats them equally. The Utah district court was persuaded by this rationale in dismissing the original complaint. However, it is not clear to this Court the extent to which the Utah district court considered that the 24-hour nursing requirement as to SNFs and IRFs was not expressly imposed by the Plan's language but instead followed from the Plan's requirement that those facilities be "duly licensed by the appropriate governmental authority." (Defs.' Mem. in Supp. of Mot. to Dismiss, Ex. 1, Plan at 43, Dkt. No. 60-1.) Among the requirements for licensure of SNFs and IRFs under federal regulations and the regulations of the relevant state, Utah, is that those facilities must have 24-hour nursing services. (FAC ¶ 46.) Notably, and unlike in the original complaint, the FAC alleges that the relevant regulations, 42 CFR § 418.110(b)(1) and Utah Administrative Code § R432-750-22, mandate that inpatient hospice care shall be required to provide 24-hour nursing services but do not demand that such care be onsite. Thus, in that respect, the Plan's requirement that RTCs provide such services onsite imposes a more restrictive term on mental health services than for comparable medical and surgical care. *See Brady K. v. Health Care Serv. Corp.*, No. 1:25 C 759, 2025 WL 2734542, at *5 (N.D. Ill. Sept. 25, 2025) ("The relevant Medicare/Medicaid provision, however, requires SNFs to 'provide 24-hour licensed nursing service' but does not specify that the service must be on site. 42 U.S.C. § 1395i-3(b)(4)(C)(i). That difference is material here because it permits the Court to reasonably infer that the plan's requirement for RTCs is 'more restrictive' or a 'separate treatment limitation' as compared to those for medical/surgical care like SNFs.").

Even if state and federal regulations required SNFs and IRFs to provide 24-hour ***onsite*** nursing services the same as the Plan's requirement for RTCs, the Court still believes that the source of the obligation matters. As noted above, the only thing that the Plan requires of an SNF is that it be "duly licensed by the appropriate governmental authority." (Plan at 43.) By contrast, the Plan similarly requires an RTC to "be licensed in the state where it is located, or accredited by a national organization that is recognized by the Claim Administrator." (*Id.* at 42.) In addition to licensure, the Plan requires an RTC to provide "24 hour onsite nursing services." (*Id.*) And the FAC makes clear that Cascade did not have to provide 24-hour onsite nursing services to obtain its license to operate as an RTC under Utah law. (FAC ¶ 52.)

In one sense, it can be said that the Plan treats RTCs and SNFs equally in that both are required to provide 24-hour onsite nursing services. However, such an understanding depends on a myopic focus on the fact of such requirement. Even considering just the Plan's written language, the 24-hour nursing requirement is an ***additional*** requirement as to RTCs—whereas the Plan requires only that SNFs and IRFs be licensed, it requires an RTC to be licensed ***and*** provide 24-hour onsite nursing services. While the Plan effectively requires both SNFs and RTCs to provide 24-hour onsite nursing services, provision of such services is merely one condition of licensure for the former but the same is not true for the latter. In contrast to SNFs, the Plan requires RTCs to satisfy all the conditions of licensure as well as an additional condition that is not also a condition of licensure—*i.e.*, the provision of 24-hour onsite nursing services. *Brady K.*, 2025 WL 2734542, at *4 ("[A]n express 24-hour on-site nursing requirement is different from a treatment limitation that incorporates extrinsic standards such as state licensing or Medicare/Medicaid provisions, even if those extrinsic standards impose the same express requirement. Thus [the] plan imposes a 'separate treatment limitation[] that [is] applicable only

with respect to mental health or substance use disorder benefits.'" (quoting 29 U.S.C. § 1185a(a)(3)(A)(ii))).

Insofar as the Utah district court thought it immaterial that the Plan imposed the 24-hour onsite nursing requirement expressly on RTCs but only indirectly on SNFs and IRFs by incorporation of licensure requirements, at least one other court in this District agrees. *O.F. v. Health Care Serv. Corp.*, No. 1:25-CV-00127, 2026 WL 885184, at *5 (N.D. Ill. Mar. 31, 2026). That district court observed that, "[a]lthough the requirements' ***origins*** differ, the Parity Act is concerned with whether the . . . limitations are ***actually*** more restrictive for mental-health treatment." *Id.* But, as the district court noted in *O.F.*, its view differs from that of several other courts in this District that have "concluded that plaintiffs plead a plausible Parity Act violation because the 24-hour-nursing requirement applies to [SNFs] by operation of state and federal law yet applies to [RTCs] directly via the plans' plain text." *Id.* (citing *Brady K.*, 2025 WL 2734542, at *4; *Brian W. v. Health Care Serv. Corp.*, No. 24 CV 2168, 2025 WL 306365, at *6 (N.D. Ill. Jan. 27, 2025)). Respectfully, this Court is more persuaded by the analysis of the majority of courts in this District. While this Court agrees with the *O.F.* district court's observation that, "[w]hether the limitations are 'as written' or 'in operation,' 29 C.F.R. § 2590.712(c)(4)(i), the upshot is that equal limitations arising from different ***sources*** do not create a disparity in limitations," Plaintiffs here have adequately pleaded that the 24-hour onsite nursing requirement creates a disparity as applied to RTCs.

As an initial matter, it can reasonably be inferred that a Utah-licensed RTC is less likely to include 24-hour onsite nursing among its services than a licensed SNF because only the latter type of facility is required to provide such services to obtain its license. Moreover, the FAC alleges that the "generally accepted standards of care" for RTCs do not call for those facilities to

provide 24-hour onsite nursing services. (FAC ¶¶ 51–54.) Given that 24-hour onsite nursing services are neither a condition of RTC licensure nor are they part of the generally accepted standards of care, the FAC alleges that only "a very small number of [RTCs] in Utah have 24-hour onsite nursing services." (*Id.* ¶ 57.) That suffices to plausibly plead the disparity between SNFs and RTCs that the *O.F.* district court found lacking.

Defendants emphasize that the Utah district court found Plaintiffs' references to "generally accepted standards of care" irrelevant to the Parity Act analysis. But that is not quite accurate. What the Utah district court actually said was that Plaintiffs' "conclusory allegations" with respect to generally accepted standards of care were "insufficient." *M.P. v. BlueCross BlueShield of Ill.*, No. 2:23-CV-216-TC, 2023 WL 8481410, at *4 (D. Utah Dec. 7, 2023). Further, the Utah district court noted that Defendants had come forward with evidence of the relevant standard of care for adolescent RTCs, which did call for 24-hour onsite nursing services. *Id.* In response to the Utah district court's analysis, the FAC now contains a more fulsome discussion of the generally accepted standards of care and further rebuts the proof that Defendants had provided to the Utah district court. (FAC ¶¶ 51–57.) The new allegations show that there is at least an issue of fact as to whether 24-hour onsite nursing is a part of the generally applicable standards of care for adolescent RTCs, which suffices at this stage to state a claim. *Brian W.*, 2025 WL 306365, at *7 ("[T]he standard of care is generally a factual question appropriate for summary judgment or trial, not a motion to dismiss . . . .").

In sum, Plaintiffs plausibly allege that the Plan has imposed a treatment limitation on mental health services that has the effect of significantly reducing coverage for licensed and credentialed RTCs, while not applying a comparable restriction to analogous medical or surgical facilities. Whether a 24-hour onsite nursing presence is a standard component of care—and

whether the Plan's application of such a requirement constitutes a Parity Act violation—are questions that cannot be resolved without a developed factual record. Plaintiffs' allegations are sufficient to state a plausible Parity Act violation at this stage. Accordingly, the motion to dismiss Count II is denied.

### II. Denial of Benefits (Count I)

In Count I, Plaintiffs seek recovery of benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B), arguing that Defendants wrongly denied their requests for coverage of C.P.'s treatment at Cascade from 2020 to 2021. Defendants move to dismiss this claim, arguing that it is identical to the one asserted in the original complaint, which was dismissed by the Utah district court. Plaintiffs concede that their denial-of-benefits theory has not changed: they continue to allege that Defendants improperly denied coverage for medically necessary treatment provided by a licensed RTC. The denial, as Plaintiffs concede, was based solely on the facility's failure to provide 24-hour onsite nursing services.

The Court applies general principles of contract law to interpret insurance policies under ERISA and construes any ambiguities in favor of the insured. *Cheney v. Standard Ins. Co.*, 831 F.3d 445, 450 (7th Cir. 2016). As Defendants observe, a claim under § 1132(a)(1)(B) must arise from an entitlement to benefits under the terms of the Plan. *See Smith ex rel. Smith v. Health Care Serv. Corp.*, No. 19 C 7162, 2021 WL 963814, at *3 (N.D. Ill. Mar. 15, 2021). Here, the Plan expressly requires that RTCs provide 24-hour onsite nursing, and Plaintiffs do not allege that Cascade satisfied the condition. Nor do they argue that the Plan's definition is ambiguous. Rather, they challenge the lawfulness of the requirement itself under the Parity Act. In their response, Plaintiffs argue that their benefits claim should proceed because it is premised on the enforcement of a Plan term that they plausibly allege violates the Parity Act.

As discussed above, Plaintiffs have alleged that the Plan's 24-hour onsite nursing requirement constitutes a treatment limitation that is more stringent than the standards applied to comparable medical and surgical facilities. If Plaintiffs ultimately succeed in proving a Parity Act violation, the denial of benefits based on that unlawful requirement may also be improper. *Brady K.*, 2025 WL 2734542, at *2. Thus, although Plaintiffs do not allege that current Plan terms confer benefits for C.P.'s treatment, their benefits claim is viable to the extent it is predicated on the application of a treatment limitation that may ultimately be found unlawful. Accordingly, the motion to dismiss Count I is denied.

**III. Request for Statutory Penalties (Count III)**

Defendants also move to dismiss Count III, in which Plaintiffs assert that Defendants violated ERISA's procedural protections by failing to provide a full and fair review of their benefits claim, as required by 29 U.S.C. §1132(c)(1). Specifically, Plaintiffs contend that Defendants failed to produce the documents under which the Plan operated. Plaintiffs allege that BCBS partially complied but did so largely by sending documents that were duplicative of those that M.P. himself had provided during the appeals process. The Plan Admin did not comply with the request at all. Defendants contend that this Count should be dismissed for the same reasons that the Utah court previously dismissed it: a claim under 29 U.S.C. §1132(c)(1) is only viable against the plan administrator and BCBS is not the plan administrator, and Plaintiffs sent their requests to the wrong address for the Plan Admin. In their response, Plaintiffs abandon their claim against BCBS and the Plan, so Count III will be dismissed as to them. *See Mondry v. Am. Fam. Mut. Ins. Co.*, 557 F.3d 781, 794 (7th Cir. 2009) (holding that a statutory claim under 29 U.S.C. §1132(c)(1) is not available against a claims administrator but is only viable against the plan administrator).

However, Defendants do not dispute that Arthur J. Gallagher (Illinois), LLC is the proper Plan Admin or that the requested materials fall within the scope of § 1132(c)(1). In fact, the Utah district court recognized that while the original complaint misnamed the Plan Admin and left uncertainty as to whether the request was properly directed, Plaintiffs should be given leave to amend. The FAC remedies the previous deficiencies. Plaintiffs now allege that they submitted a written request for Plan documents to both BCBS and the Plan Admin, now correctly identified as Arthur J. Gallagher (Illinois), LLC. They further allege that they instructed BCBS to forward the request if it was not the proper recipient.

While BCBS provided a partial response to the request, consisting mostly of documents already in Plaintiffs' possession, the Plan Admin did not respond at all. Those allegations are sufficient at the pleading stage to raise a reasonable inference that the Plan Admin received actual or constructive notice of the request. That BCBS responded in part to the request supports the inference that the document request reached the entities responsible for plan administration. Whether the Plan Admin did in fact receive and ignore the request is a factual question to be resolved at a later stage. Accordingly, the motion to dismiss Count III is denied as to the Plan Admin.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the FAC (Dkt. No. 59) is granted in part and denied in part. Count III of the FAC is dismissed with prejudice as to BCBS and the Plan. The motion is otherwise denied.

ENTERED:

Dated: September 29, 2026

Andrea R. Wood
United States District Judge